Case No. 17-7004, Mady Marie Louise Schubarth, Appellant, v. Federal Republic of Germany et al., Mr. Brabant for the Appellant, Mr. Harris for the Appellant. Good morning, Your Honor. Good morning. I'd like to reserve four minutes for rebuttal with the Court's permission. This case is about a two-step process for evaluating a sovereign's invocation of sovereign immunity. The District Court cut short the process, focusing on whether the complaint did or did not sufficiently allege the elements of foreign the expropriation exception, and never got to the factual development of the case. And so first and foremost, the question is, is a fair reading of the complaint, applying the inferences that reasonably can be applied, satisfying the Rule A pleading standard? And clearly they do. The complaint alleges with specificity that Mrs. Schubarth's property in East Germany was taken by the German government through a series of steps. It started in 1991 and ended in 2014. It alleges that the property is owned or controlled by an agency or instrumentality of Germany, the BBVG, and it alleges through a variety of allegations that the BBVG is engaging in commercial activities. Let's focus on that. What are the allegations about BBVG's current commercial activity in the United States? All right. In order to answer that question, we start... From the complaint, not from your appeal. Starting with paragraph one of the complaint, which, if it were the only place in the complaint talking about commercial activity, I think we would be where this Court was in looking at the bare allegation, unsupported by any specific fact allegations, that property was used by Hungary in the United States for a commercial purpose. We have here that the BBVG continues, has engaged and continues to engage in commercial activity in the United States, including sales marketing of her property and other properties. So what does that mean? What activities were they engaged in? Well, in paragraph four, the BBVG is alleged to have provided information about expropriated properties to potential customers to give lease and purchase prices and other details necessary to make a bid to purchase the property. The complaint in paragraph... Was this an allegation that this was ongoing at the time the complaint was filed? Ongoing at the time the complaint was filed. The complaint says, has engaged and continues to engage at the present time. Now, how does the complaint back that up with allegations? In paragraph 13, the complaint focuses on the early years of marketing these expropriated properties. An office was opened in New York. The New York office generated over a period of four years, 1.6 billion in sales. Over the continuing years, as reported in statistics from the BBVG, the United States was the largest market for these expropriated properties. In order to sell that volume of property, it is reasonable to infer that the BBVG set up a network of pension funds, of high net worth individuals... And when did that office close? It closed in approximately 1994. When it closed, having just developed this fabulously successful commercial market in New York, the BBVG continued those activities as alleged in the complaint using its website to reach out to buyers in the United States. And those sales continue. It's a sufficiently reasonable interpretation of these allegations that the BBVG continued to sell properties just like Mrs. Schubert's. How do we know that a website is targeted to the U.S.? I mean, a website is targeted to whoever on the World Wide Web can access it, right? The website does not have to be targeted to the United States in order for the BBVG to be using it to continue the commercial activity in the U.S., namely marketing and sales to U.S. customers. How was it done? The precise details will only come out in discovery, but the way it was likely done is that the buyers who before could call New York and get details now would call the BBVG's office in Germany using the information that they got on the Internet and back-and-forth communications culminating in sales. In order to find that the complaint is sufficient, this Court may only conclude that a reasonable extension of the commercial activities in the early days through the Internet marketing continued to reach the U.S. market. We don't know specifics of customers, but we will. And we don't know the specifics. How much money has BBVG made using its website? Well, we know that according to their statistics, as of 2008, they had generated $3.3 billion total worldwide sales. In the United States, I'm sorry. We know that 1.65 in the United States was in the first four years. But in the first four years, that's when the office was open. Two of those years, the office was open. Two of those years, yes. So the $1.65 billion, was that just from the office? Just from the office in New York. So what allegations have you made about the amount of sales that have been made in the United States through the website? The only data on the website. What allegations have you made? The allegation and the complaint, this is in. I mean, beyond the statement that there's been something ongoing, it seems to me you make some specific allegations about what came out of the office being here. There's no question that when the office was here, there was ongoing commercial activity. The issue is whether you have pled with sufficient specificity that the website has been a source of ongoing commercial sales in the United States. And it seems, at best, quite vague about that. The complaint need not specify the dollar amount nor specific sales in the United States. The inference that we're asking the court to make is that from this wildly successful office-based brick-and-mortar operation, when the BBBG closed the office and moved back to its German operations over the Internet to continue to reach out, and the complaint says, engaged in and continues to engage in, they successfully sold property to the American market. It's an inference. It's not alleged specifically that they sold X dollars to Y customers. It's not necessary to satisfy Rule 8. All you need to determine is that if she's given the opportunity through factual development to prove her case, she will, in fact, show those ongoing commercial sales. Can I ask you a question about how you believe the statute should be interpreted? Let's suppose the facts are, and let's suppose it were pled in a complaint, that there was an office in New York, and the day before or the week before the complaint was filed, they shut down the office in New York and all commercial activities in the United States. And so as of the moment that the complaint was filed, those commercial activities, which had been very robust and ongoing for decades, had ceased. How do we interpret the statute? Well, the statute says engages in commercial activity. It doesn't say how recently. That would be a legal question for the court as to whether activity done months before or even a few years before is relevant. But doesn't it say they shall be, it uses the present tense of is, right? The statute. The statute says engages in commercial activity. It could be from time to time and still satisfy that definition. It doesn't have to be every day right up until the date of filing. Well, it says a state shall not be immune in the case in which rights and property are taken in violation of international law. And then it says if that property or any property exchanged for such property is owned or operated by an instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity. Correct. So it shall not be immune if it is engaged. Correct. And is engaged need not be on the day before the complaint was filed. It's a matter of reading the complaint liberally. How much is in the complaint that can be proved? It would have been so easy to make allegations, if there were facts to support it, make allegations that would have satisfied what the district court said was missing here. The district court did not specify what was missing. What was missing from a fair reading of the district court's opinion. Well, I thought the district court specified that what was missing was allegations along the line to what Judge Wilkins is saying about is engaged because the allegations were too dated from the 1990s. I think that's the district court opinion at page 5. If the allegations stopped with the office and did not say that the BVBG continued those same activities, which is what it says. And the district court refers to that and says, but those weren't targeted to the United States, not is engaged in the United States. But it's an unfair reading of the complaint. This complaint is entitled to the inference. When it says the same functions that were done in the brick and mortar are now being done over the Internet, some of those activities are continuing to target the U.S. market. That's all that we need in order to say, let's now go to the next stage, as this court held in Phoenix Consulting v. Angola. Let's go to the next stage and see whether the court holds that. What we have is a very, very different than the hypothetical Judge Wilkins. What we have is the allegation that the New York office closed down 20 some years ago. And then just very vague allegations about anything that's taking place after that. And obviously that bothered the district court. And I think I agree with, if I understood Judge Kavanaugh's question, that doesn't seem like if there are facts to support some ongoing commercial activity in the United States,  It is alleged here, Your Honor, with a fair reading, the ongoing specific activities of supplying potential buyers in the United States with prices. The activities that you have a website that is in English, that's not quite the same as alleging that there's ongoing commercial activity in the United States. It is alleged here. We don't have the specific details of how it was carried out. But it would be, how unfair would it be to allow this case to be dismissed when, in fact, the BBBG, using its website, answered inquiries from the United States right up until the present day, right up until now, and made sales to customers. I have two questions to help my understanding. So what Ms. Shubart, and I hope I'm pronouncing her name right, you suggest that she was unable to bring this lawsuit until after seeking restitution from Germany, and that was a 19-year delay, right? Correct. Help me understand, why did she have to wait? Why couldn't she bring her lawsuit here? So Germany enacted several statutes, the first in 1991. But did any of those forbid her from bringing this suit here? No, no forbidding. It was just a decision on her part? No, let me just explain what Germany did. In 1991, they enacted a statute. I actually understand that. They said apply for restitution. They decided, no, we're not giving it to you. I understand all of that. My only question is, why did she wait? Because the decision on compensation only came out on the 18th of November, 2014. So she was hoping for favorable relief from Germany, didn't get it, and so came here. She asked the agency, go to the foreign ministry, apply to the finance ministry, apply the treaty, and give me what I'm entitled to, and she couldn't know whether they did that until the decision came out. So is it your position that she didn't have a right claim because there hadn't been an expropriation in violation of international law until she got the final decision from Germany? The legal theory of the complaint is a creeping expropriation, just like in McKesson, a series of steps. The last step in McKesson was a cutoff of McKesson's participation in the board. There were earlier steps. Here, the last step was a compensation decision that offered her 35,000 euros, 11,000 of which were interest, for 500 acres. That was not what the treaty required. That was not what she was entitled to as a U.S. citizen, but she couldn't know that until less than a month before the complaint. So she had filed back in 1994 while the New York office was still open here in the U.S. Then I think the court would have entertained the motion to dismiss on the grounds that there was not a full, ripened cause of action for taking in violation of international law. And that taking had those steps. Denial of restitution, passing a statute that said we're not going to give Americans implicitly, we're not going to give Americans the treaty compensation standard, a preliminary decision not based on the treaty, and then a final decision not based on the treaty. Maybe this isn't necessarily equitable, but maybe Congress intended for there to be a present commercial activity in the U.S. at the time of the lawsuit, and so a sovereign could essentially decide to end their commercial activities in the U.S. before they make their final decision on the expropriation to escape the jurisdiction of the U.S. If that's the way that Congress wrote the statute, is there anything wrong with that? Congress wrote the statute to require a nexus requirement. Either the property has to be here or the property can be back in the host state, but the agency that owns or controls it has some commercial activity here. And the motion for reconsideration brought to the attention of the court a specific commercial contract that was acted on as recently as a few months before the complaint was filed, but the court refused to entertain it. That was wrong. That was a lack of due process for a claimant who, in her complaint, said there is ongoing use of the Internet to do what had been done in the New York office. The fact that it isn't more specific is based on the fact that she didn't have access to more specific information from the website, but she's entitled to develop those facts. And you sought jurisdictional discovery or below? We didn't get a chance to ask for jurisdictional discovery. The court cut this short by not even holding Germany to the standard that this court has imposed. Time and time again that the defendant must come forward and show by declarations and documents that the allegations in the complaint are not true. So if, for example, Germany had presented to the district court with an affidavit that said, no, when we closed the office, we shut down all contact with the United States and there were no further transactions, that's a specific factual denial. Then there would have been jurisdictional discovery to test whether that denial was correct. I thought in its motion to dismiss, it was argued that the BBVG does not engage in commercial activity in the United States. That's pretty strong. That is the same bald cursory defense that Germany is claiming was in the complaint as a bald cursory allegation. They didn't back it up with any facts. But then you came back in the opposition to the motion to dismiss and page 7 said, internet marketing, posting information on the internet, allows users from throughout the world to sign up for newsletters, portions of the website are in English, and then the total amount of sales. That's really nothing connecting it to the United States. That's a brief. The complaint alleges that these activities continue. This is the brief identifying the key issues after the allegations made in the motion to dismiss that you haven't done enough in the complaint, and so I was looking at that just to point out that paragraph, which summarizes, I think, in the light most favorable to you, you're putting forth your best arguments, what is in the complaint, doesn't really say much of anything about the United States. That paragraph taken out of context does not do the job of putting the complaint allegations in the light most favorable to Mr. Schubert. If you look down the list of exhibits that were attached with that pleading, all of those exhibits were designed to show, to exemplify what had been alleged in the complaint. There was no effort to go further than what was in the complaint there. That was done on the motion to reconsider. The best sentence or two sentences in the complaint are in the first paragraph. Well, we start with the first paragraph, one, that sales marketing to potential buyers in the United States was being done and continues to be done to the present day. And then in paragraph four, what was the activity? And the sentence, subsequently the BBBG has continued these activities by posting links. That's enough for this court to say, okay, she should be able to prove what she's alleged, that in fact these activities continued in the United States. It's not on the website. It's not available from a literature search. But it's alleged here, and the reasonable inference is that she will be able to show that in fact these sales done in New York continue. If you have a website and no one from the United States accesses or engages in a transaction, is that enough to be commercial activity in the United States? No. You would need some evidence at the factual development stage. You'd need some evidence to back up these allegations that the BBBG continued these activities that were carried out in the office using its internet. And the way we would do that is we would ask for the e-mails back and forth from the U.S. from potential buyers. What did the buyers ask for? What did the BBBG give them? And were some of those communications the beginning of what resulted in a sale? We think that we can show that, but we need the opportunity. And we feel that Germany, by sitting back and relying only on the complaint allegations and mischaracterizing them and leaving out these references of ongoing commercial activity in the United States, thought they could get away with it. They said baldly, no, we don't do any commercial activity in the United States. We know that's not true because the motion for reconsideration presented the court with a contract funded by USAID to provide consulting services to a company in the United States. Can I just make sure I understand what your argument is about how the statute should be construed? Are you saying that the statutory language that provides the exception from sovereign immunity that says is engaged, are you saying that we should not interpret that or construe that literally so that it doesn't matter whether there's commercial activity at the time of the filing of the complaint in the United States? When that issue is before the court, when plaintiff has developed the facts and shows the last transaction based on exchanges of e-mails with American purchasers, let's suppose it was eight months before the complaint was filed. Then the legal interpretation of the statute is right, and you'll have to decide it's eight months before. Good enough. In some of the cases it's— Why isn't it right now? I mean, why don't we have to figure out what those words mean right now as far as at least measuring the allegations in the complaint versus what the statute requires? The reason is that the complaint alleges that those activities that were being engaged in continue to be engaged in up to the present time. So the issue of what would be a cutoff, how recent does it have to be, hasn't yet come up. When the evidence is developed, then it will come up, then we'll see. Your point is that the complaint alleges ongoing—you just said this, but ongoing to the present day. Correct. Now that may not turn out to be true, but your point is the complaint alleges that. Exactly. And as the Supreme Court in H&P held, in the ordinary case, the plaintiff seeking to overcome an assertion of immunity has the right to develop the facts and show— We'll give you a couple minutes back on that rebuttal. Okay. Thank you very much. We'll hear now from Mr. Harris. Good morning. Good morning. Fair Pleas of the Court, I'm Jeffrey Harris representing the Federal Republic of Germany and BBVG. First, you didn't ask about this, but with regard to the Federal Republic of Germany, the statute, the expropriation exception, requires that the property be present in the United States for there to be jurisdiction over the Federal Republic of Germany. In this case, the complaint alleges that the property is in Germany. So there really is no argument that there is any jurisdiction under the expropriation exception against the Republic of Germany. With regard to BBVG, there are really two parts to the argument. One, if BBVG as an agency or instrumentality of Germany is carrying out a core governmental function, then it, too, is regarded as the sovereign state, and the same standard applies, namely that the property has to be present in the United States in order for there to be jurisdiction. Did you put any facts in with your motion to dismiss that would help us to decide that question, or are we just stuck with what's in the complaint? The references that we put in in our motion were to what we argued, Judge Wilkins, is that the complaint says that this agency was set up, and they used the governmental function of dealing with property that had been expropriated or otherwise lost during the stage in which the Russians were in what became East Germany, and then after reunification, this agency's job, which we argue is a governmental function, was to make some order out of this and deal with the property that had been under the East German system. There was no private ownership of property. So we say that that is quintessentially a governmental function. But the expropriation, I could see if the allegation is that this is the agency or the instrumentality that actually expropriated the property, then I think you would have a pretty strong core function argument. But they're saying that this is the agency that was put together to dispose of the property that had been expropriated. I mean, it seems to me akin to, it's not a perfect analogy, but the government seizes property in the course of arresting people here in this country, but they have a contractor or some government agency that sells off that property and then proceeds to the crime victims or to the government. I wouldn't see that instrumentality as exercising a core function of the government. Well, to be perfectly candid, you can argue that one flat around. There is some authority for the fact that you have to look to the original expropriation and not to the subsequent disposal of the property. But I've made the argument I think that this is a core function, but I want to move on to tell you that our position is even if it's not a core function, if you regard BVVG as an agency and instrumentality not to be regarded as the state, then the statutory standard which you recited a few minutes ago, Judge Wilkins, is twofold. One, that the property has to be owned or operated, and two, with regard to present commercial activity in the United States. Is it enough on present commercial activity to allege that an entity markets via the Internet to customers in the United States on an ongoing basis? I don't believe so, Your Honor. In today's world... Is marketing accompanied by evidence of a sale, one sale? Is that enough? I don't believe so, Your Honor. And what's your case law support for that? And I think we put this in a footnote in our brief, that if you look in an analogous of minimum contacts,  it is not sufficient to have minimum contacts with the jurisdiction. Now, I recognize that's not under the Foreign Sovereign Immunities Act, but I think by analogy you could draw that conclusion. Because I'm thinking if you read it liberally and just for purposes of questioning, they're alleging that there's ongoing marketing efforts via the Internet to customers in the United States. Now, just take that as a given for a second, and you dispute that. But if that's what the complaint says, this entity engages in ongoing marketing efforts to customers in the United States, but there have never been any sales. Let's just suppose that, too. But there have never been any sales. But we're trying to get customers, and we're marketing to the United States. Is that, as a legal matter, good enough? And I'm uncertain about that, actually. Well, I don't think so. And I think you have to look at this through the lens of what the pleading standard is. No, no, no. Okay. So you want me to accept that as a fact? Yeah, yeah, yeah. For present purposes, just accept we, entity, are marketing to customers in the United States. We're not good at it. We don't have a sale. I mean, you know, it's editorial. But we don't have a sale yet. Is that good enough that we're marketing to customers in the United States? So what I think you're asking me is, marketing without sales, is that commercial activity? Yes. And I would say it is not. And what's, are there any, yeah. No, no, I can't. But how could that be? I mean, what if the marketing was false and deceptive, and the Federal Trade Commission wanted to exercise a jurisdiction to say, stop your false and deceptive marketing? You're saying that they wouldn't have any jurisdiction because, you know, there hadn't been a sale yet. Yes. That is what the position I would take. And your authority for that? There has not been a case that I know of where we separate. Either way, right? Yeah. Where we separate marketing. Gotcha. Let me ask you, in your motion to dismiss, I asked this of your friend, you state that BBVG does not engage in commercial activity in the United States. Correct. Is that statement still accurate? Yes. Yes. That statement is accurate. What BBVG does is, they have a website which is available worldwide, and part of it's in English. And that's it. Suppose there were sales. Excuse me? I mean, the point is, at any moment, there could be a sale effectuated with someone in the United States. Well, it could be, but the complaint no longer is sufficient if it's the not implausible standard. Under the Hamerlich drilling by the Supreme Court and this Court's opinion in Owens, you now need to flesh out. I'm sorry to interrupt, but it's not implausible just, I don't think. You tell me if this is wrong. It's not implausible just as a general matter that this website, with its marketing efforts, would generate a sale in the United States. Is that implausible? No, but that's not the standard anymore. The standard is you need to provide facts, and in the words of Justice Breyer's opinion, and then as picked up by Owens in this Court after that, the word is you need to prove these allegations. Okay, so if they had put in their complaint what they now say in their briefing, in other words, that there was $1.65 billion in sales through 2008, a contract with Chemonix in 2010, and a presentation regarding that contract in Washington, D.C. in 2014. If those had been in the complaint, that's sufficient to allege commercial activity, I presume. Well, I don't think that that last piece is, because this was. This is the last piece, the presentation in D.C. in 2019. Yes, I don't believe a presentation to an international organization in the District of Columbia about a contract dealing with agricultural efforts in Egypt is enough to be commercial activity. How about the other two, though? If the complaint had alleged $1.65 billion in sales through 2008 and the 2010 contract with the USAID subcontractor. If those sales, if they were alleging in the complaint, if that had been in the complaint, if it alleged it in the present tense, then I think if they could have established that, that would be commercial activity. But the other piece, which Judge Wilkins read before we started, is that BBVG has to own or operate the property. And what's alleged here is sort of an interesting construct. What they're suing for is the fact that Mrs. Schubarth did not get sufficient compensation from a state, not the federal German apparatus, but the state of Thuringer, issued a compensation award which she regards as inadequate. By analogy, I would say what they've really alleged here is that they are suing the federal government of the United States because the city of Alexandria took two feet of their front lawn to widen the road and the city of Alexandria, the state of the Commonwealth of Virginia, didn't give them fair and adequate compensation. That's what they're alleging in this complaint. The agency, the state agency of Germany, the state of Thuringer, which is not a party in this case, they are alleging that there was not sufficient compensation issued by the state of Thuringer. And they are seeking to hold BBVG responsible and Germany responsible for that. And that is antithetical to the notion that BBVG owns or operates the property. What they're saying is we filed for compensation, we got an award, we're dissatisfied with the award, and now we want to sue the Federal Republic of Germany and the agency that sells the property. That doesn't square with the notion that BBVG owns or operates this property, which is a requirement of the expropriation exception. So what I would say to you is that when you look at it as a whole, the allegations dealing with a non-party issuing a compensation award, and what they're asking for in terms of relief is more money. That's what this case is about. We want more money than the state of Thuringer issued as fair and just compensation. And therefore, we're going to sue the Federal Republic of Germany and an agency that's charged with sale of expropriated property. There is no indication anywhere in the complaint that BBVG owns or operates this property. So even if you, you know, the commercial activity leg of the construct is one, but the other equally important one is that BBVG owns or operates the property. And if you look at that first paragraph of the complaint, it basically, all it does is recite the statute. It rewords it, you know, in more common language, but all it is is saying they own or operate the property. There is not one iota of evidence presented. And the sales marketing to potential buyers in the United States. So is that the first paragraph of the complaint? Right. But the point is it also alleges in just repeating the statutory language that this agency owns or operates the property. There is, other than saying it, there are no, there is no flesh on the bones with regard to that. That is an absolute requirement. Even if BBVG was engaging in commercial activity in the United States every day, if they don't own or operate this property. Sorry, that's your separate argument. Yes, that's my separate argument. With regard to just a couple of other points, the appellant argues that the judge, that their motion to strike was improvidently denied. They also argue that they should have, under Rule 59, been able to get some relief. And I'd like to point out, I know the court knows this, but I want to say that the standard of review for that is different than the de novo standard. It's abuse of discretion. Judge Cooper said with regard to the motion to strike, he said basically, I'm not, I didn't consider anything that Mrs. Shoebarth wants me to strike when I made my decision. And the answer to that by Mrs. Shoebarth is that we don't really, that's what the judge says, but we don't believe it. We think that Judge Cooper said what he meant and meant what he said. Secondly, that was only presented in our reply after the opposition dumped in a hundred and something pages of material that wasn't attached to the complaint, and if they wanted it considered in the complaint, should have been. So my time is up. Thank you very much. Thank you very much. Let me correct some very serious misstatements by opposing counsel. First of all, the complaint alleges that Germany, in violation of international law, took the property. Under the theory of state responsibility, it doesn't matter that it delegated activities to the BBBG or to a state agency as it did to the agencies in all of the former East German states to handle requests A, for restitution, and B, for compensation. The CHECO says that absent an agency relationship, the court lacks subject matter jurisdiction over the foreign state for acts of its instrumentality, but in this case we have the alleged agency relationships alleged in the complaint. Germany's denial that it's an agency isn't enough to overcome the allegation. It had to come forward with declarations of documents to show it. The complaint alleges that there were specific transactions continuing in the present time if you give the inference that the complaint is entitled to. Can I ask the question that is, for me, the heart of this at the moment, which is, is marketing via an Internet site, even ongoing marketing via an Internet site, to buyers all over the world, including potential buyers in the United States, good enough to say that you're engaged in commercial activity in the United States if you have no such buyers in the United States? Absolutely. Would that blow a hole in this limitation because any entity engaged in sales anywhere in the world could be construed as engaging in commercial activity in the United States? Not on the basis of this complaint. This complaint says the U.S. market was a wildly successful market. It was. On that point, it was. It's not plausible to say that on one day it is and the next day it isn't. The complaint alleges that that valuable market continued to be marketed through the website right up to the present day, and as the question was posed earlier, one single sale would be enough. In answer to the question that Judge Wilkins put, Section 1603 of the statute defines commercial activity either as a single transaction or as a course of transactions. It doesn't say that that single transaction had to occur three days before the complaint was filed. The complaint doesn't refer even to a single transaction. The complaint refers to the ongoing provision of commercial marketing activities in the U.S., and it does not allege a single sale. It is a plausible inference that having sold so many properties to Americans, they continued to sell the properties to Americans. They just didn't need an office in a tower. This is a—I'm trying to be helpful with this question. So your point would be reading the complaint in a light most favorable to you. There's ongoing marketing activity, including the buyers in the United States. There may or may not be buyers in the United States, but we've alleged sufficiently to get past the motion to dismiss that there are buyers in the United States. That may turn out to be false, in which case it will be properly tossed. Correct, and that's what factual development does. But even if the commercial activities that BBBG engaged in were limited to the sale of consulting services, and I can give you three references to the record to show that that's what they were doing in the hemonics contract, unrelated to the sale of expropriated properties, that would be enough. And that's why it was so wrong for the court not to focus on the outcome determinative aspect of that evidence. If he'd let it in, he would have seen that BBBG was selling consulting services on a USAID contract to a U.S. company. That's all that was required. So even if— This is in your 59E? Correct. So even if you side with the analysis of the district court— We say he didn't need to consider that because it should have been presented earlier. He didn't consider it because he failed to focus on the part of the rule that said even if it could have been presented earlier, if in the interest of justice it's necessary to let it in, he should have. And that's what this court held in several cases, the PETA case, the people for the ethical treatment of animals, and in Good Luck Nursing, where the evidence—the court said the evidence could have been found earlier. But we can't let this decision lie as is because it would be wrong. It would come out the wrong way. If you let the evidence in, now the outcome is different. That's all that we ask that this court do, is find that the district court, by failing to acknowledge that in the interest of justice exception to evidence that could have been found earlier, he failed to properly carry out his discretion. He didn't recognize he had it. We've never held, have we, that the court has to articulate all of the grounds that may permit it to take an action before it denies taking the action to therefore believe that the court really considered all of its options, right? You're correct, but here there's no doubt. The district court said, I'm not doing it because I think you could have found it earlier. And it isn't true that the information that was put in with the motion to reconsider was out there to be seen just by going to the Internet page. The Internet page did not say Chemonix, a U.S. company, has purchased consulting services from the BBBG, and it's in connection with that that they came to the U.S. and did what they did. But the joint appendix, pages 206, 146, and 226, say exactly that. You have a representative of the BBBG giving her consulting services report to Chemonix, delivered in Washington. And on the last page of the report, she describes what the BBBG does for consulting. And on this contract, it was consulting about their knowledge of privatization of properties in Egypt. That's enough. On the BBBG's website, page 146. We have your argument, Mr. Marvin. Thank you very much. The case is submitted.
judges: Griffith, Kavanaugh, Wilkins